IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiffs,<br><br>vs.<br><br>RODNEY P. MAZZULLA,<br><br>    Defendants. | **4:17CR3089**<br><br>**FINDINGS, RECOMMENDATION, AND ORDER** |

Defendant Mazzulla seeks to suppress all evidence seized when the "detached garage at 1421 South Folsom, Lincoln, Lancaster County, Nebraska" (hereafter "the Folsom Street garage") was searched on April 2, 2017 and April 22, 2017. (Filing No. 39 & Filing No. 54). Defendant argues the warrant applications submitted by Officer Anthony Gratz of the Lincoln Police Department fail to support a finding of probable cause because they do not provide a nexus between the place to be searched and alleged criminal activity. (Filing No. 55, at CM/ECF pp. 11-14). Defendant further argues that even if the applications do support a probable cause finding, Gratz included false information and concealed material information when applying for the warrants, and if corrected to include the omitted information and to remove the false information, the warrant applications failed to provide a sufficient showing of probable cause. Defendant argues the Leon good faith exception (United States v. Leon, 468 U.S. 897, 916 (1984)), cannot apply because Gratz misrepresented the facts when applying for the warrant. (Filing No. 55, at CM/ECF pp. 7-9; 32-35). Finally, Defendant claims that even assuming the warrants were valid, the recreational vehicle parked in the garage was Defendant's home, the warrants did not permit a residential search, and the officers' search exceeded the scope authorized by the warrants. (Filing No. 55, at CM/ECF pp. 27-32).

In support of his motion and supplemental motion to suppress, Defendant submitted Officer Gratz' warrant applications along with copies of testimony provided before the state court, LPD records, Nebraska crime laboratory reports, the affidavit of Mazzulla's former counsel, and video recordings. Defendant claims this additional information, when compared to Gratz' affidavits in support of the applications to search the Folsom Street garage, provides the threshold showing for a Franks hearing. For the reasons discussed below, Defendant's motions challenging the warrants as lacking probable cause and for a Franks hearing should be denied. However, a hearing will be held on Defendant's motion to suppress the evidence found during a search of the recreational vehicle within the garage.

## STANDARD OF REVIEW

A search warrant and accompanying application is considered presumptively valid. Franks v. Delaware, 438 U.S. 154, 171 (1978). And even if the judge issued the warrant in error, evidence seized pursuant to a search warrant will not be suppressed if the executing officers' reliance upon the warrant was objectively reasonable. Leon, 468 U.S. at 916. This good-faith exception does not apply when 1) the judge issuing the warrant was misled by an affiant's false statements; 2) the issuing judge wholly abandoned his or her judicial role; 3) the affidavit is so lacking in indicia of probable cause that official belief in its existence is entirely unreasonable; or 4) the warrant is so facially deficient that the officers cannot reasonably presume it to be valid. Leon, 468 U.S. at 923.

Defendant does not argue the issuing judge "rubber-stamped" Gratz' warrant applications. He argues the affiant officer misled the issuing judge by

concealing material facts and including false statements in the applications such that the resulting warrants were not only facially deficient, but were based on material misrepresentations.

When a defendant challenges a warrant application, a hearing is not required unless the defendant makes a threshold showing that the affiant deliberately misled the judge, and had the judge known the truth, the application would have been denied for lack of probable cause.

> [T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

Franks, 438 U.S. at 171. Even assuming the defendant shows information within the application was false, or that material information was omitted, the defendant is not entitled to a hearing unless he first shows that the warrant application, corrected to remove allegedly false information and to include allegedly concealed material facts, would not have supported a finding of probable cause. Franks, 438 U.S. at 170; United States v. Frazier, 280 F.3d 835, 845 (8th Cir. 2002).

## STATEMENT OF FACTS

Defendant challenges the warrant application on its face, arguing there was no showing of probable cause and no reasonable officer would have relied

on the warrant as authority to search the garage at issue. "[O]nly that information which is found within the four corners of the [warrant] affidavit may be considered in determining the existence of probable cause." United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005)(citations omitted). But in this case, Defendant argues the warrant affidavits were misleading and cannot be relied upon to determine if probable cause exists.

Upon review of the arguments and facts presented in this case, the undersigned magistrate judge finds outlining the warrant application as written, and then as corrected to reflect Defendant's arguments, would be unnecessarily repetitive. So the statement of facts below will discuss what would have been presented to the reviewing judge had the four corners of the warrant application been revised as Defendant suggests.

THE WARRANT APPLICATIONS
As Corrected for <u>Franks</u> Review

The two warrant applications at issue are dated April 2, 2017 and April 22, 2017, and both authorize the search of the Folsom Street garage. (Filing No. 41-1, at CM/ECF p. 4; Filing No. 41-2 at 12).

    1)    <u>April 2, 2017 Warrant Application</u>.

Officer Gratz' April 2, 2017 warrant affidavit, <u>corrected to add alleged concealed information and to delete alleged false information</u>, stated:

- The Folsom Street garage is detached and located on the South side of an alley.

- On April 2, 2017, while investigating illegal narcotics activity, Gratz contacted Troy D. Utley. Utley had methamphetamine on his person. Utley, an informant of unknown reliability, stated his methamphetamine came from Shawndelle Burke who lived at 1010 South 10th Street, Lincoln, Nebraska (a substantial distance from the Folsom Street garage), and Burke had a half-pound of methamphetamine in her possession earlier that day. Utley stated that during past interactions, Burke possessed half- to two-pound quantities of methamphetamine, and "Rod" was Burke's source.

- Utley stated Rod resided in a utility shop near Folsom and West A Streets, and at Gratz' request, Utley pointed out the utility shop—the Folsom Street garage. Utley stated, "I don't know very much about him (Rod)," having met him only twice.

- Utley stated Burke was driving a newer red Lincoln automobile. At 4:00 a.m. on April 2, 2017, while conducting surveillance, Gratz saw a newer red Lincoln car parked in the alley behind the Folsom Street garage. Burke was not the registered owner of this vehicle.

- While conducting surveillance on April 2, 2017, Gratz also saw Richard D. Scov approach the Folsom Street garage on a bicycle. Scov entered the garage, left, and was then stopped by an LPD officer. Prior to the stop, the officer saw Scov drop some items. The items were retrieved and determined to be methamphetamine and drug paraphernalia. In response to questioning, Scov, an informant of unknown reliability, stated he was coming from Rod Azzu's residence, and described the Folsom Street garage. Scov stated Rod Azzu was currently at the garage.

- Gratz was familiar with the name "Rod:" Several persons had implicated "Rod" as a drug source during recent months.

5

- Gratz was also familiar with Burke's name: Two separate confidential informants and a LPD officer had previously implicated Burke as involved in selling large quantities of methamphetamine.

- Gratz believed the "Rod Azzu" referred to by Scov was Rodney P. Mazzulla. On July 21, 2015, Gratz had contact with Mazzulla, who was ultimately found to be in possession of 3.1 grams of methamphetamine. Throughout the course of the 2015 investigation, Mazzulla admitted to being involved with methamphetamine sales.[1]

- Mazzulla is not the owner of the Folsom Street property, and Gratz lacked any firsthand information indicating Mazzulla was renting or located at the Folsom Street garage.

- Information from the LPD records management system stated Burke was employed at Azzu Tree Trimming Service.

Gratz' April 2, 2017 warrant application was presented to a Lancaster County Court Judge. It was issued and the Folsom Street garage was searched. ([Filing No. 41-1](#)).

2)      April 22, 2017 Warrant Application.

After the search was conducted on April 2, 2017, Officer Gratz requested an additional warrant to search the Folsom Street garage on April 22, 2017. This second application, <u>corrected to add alleged concealed information and to delete</u>

---

[1] Defendant's initial motion argued Mazzulla's 2015 criminal history was stale information which could not be used as a basis for issuing search warrants. But as used in the warrant applications, Mazzulla's past history of drug use provided background only—an explanation as to why Gratz knew and suspected Defendant. The 2015 criminal history did not provide the factual basis for the warrant; that is, even if this information was deleted from the application, probable cause would exist. Defendant's motion to suppress based on staleness should be denied.

6

<u>alleged false information</u>, repeated the information in the April 2, 2017 application, and added the following:

- On April 2, 2017, LPD officers executed a nighttime "no knock" search warrant on the Folsom Street garage. At the time of the search, Mazzulla and his known girlfriend, Rhonda Meador, exited a motor home located in the garage. The motor home appeared to be their residence.

- As a result of the April 2, 2017 search, Mazzulla, a convicted felon, was found to be in possession of two firearms and 69.8 grams of a substance which pretested as positive for methamphetamine. Meador possessed suspected methamphetamine and $1,686 of United States currency. Mazzulla and Meador were arrested on multiple felony drug charges.

- After his arrest, and during a call from the jail, Mazzulla referred to "Shawndelle," also known as "Sasse," as one of his associates.

- Before 1:00 a.m. on April 21, 2017, Gratz contacted Meador when her vehicle was stopped approximately three blocks from the Folsom Street garage. At that time, Meador was found to be in possession of .2 grams of a substance which pretested positive for methamphetamine.

- On April 21, 2017, at 9:34 p.m., Gratz and LPD Officer Pulec contacted Burke at her residence. Burke was arrested on an outstanding warrant. Burke, an informant of unknown reliability, stated she currently possessed two to three ounces of methamphetamine which she received from her source, "Rodney." Burke stated she had just been to Rodney's shop (which Gratz knew to be the Folsom Street garage) and observed that Rod currently possessed a pound of methamphetamine. Burke stated the methamphetamine was hidden in the gas tank of a motorcycle.

- Gratz had seen a black Harley Davidson motorcycle in the Folsom Street garage during the search conducted on April 2, 2017.

The application to conduct a second search of the Folsom Street garage was presented to a Lancaster County Court Judge on April 22, 2017. It was issued and executed. (Filing No. 41-1).

## ANALYSIS

A. <u>Validity of the Warrants</u>.

A valid search warrant must be based upon a neutral, detached judge's finding that, under the totality of the circumstances, there is "a fair probability that contraband or evidence of a crime will be found in a particular place." Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998) (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)). Probable cause is "a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." Gates, 462 U.S. at 232. Judges must read applications and affidavits with common sense and not in a grudging, hyper-technical fashion. United States v. Ventresca, 380 U.S. 102, 109 (1965).

1) <u>Nexus between the Folsom Street garage and criminal activity</u>.

Mazzulla alleges that the warrant affidavits "failed to set forth facts sufficient to establish a nexus between the contraband sought and the place to be searched and, therefore, both search warrants were invalid." (Filing No. 54, at CM/ECF p. 1). Defendant argues the warrants were invalid because Utley stated he purchased methamphetamine from Burke, not Mazzulla; Utley was not a

8

known reliable informant; there was no truthful information connecting Burke with the Folsom Street garage; Skov did not say he obtained methamphetamine from the Folsom Street garage; and Mazzulla was not actively under investigation before the garage was searched. (Filing No. 55, at CM/ECF p. 12, 14, 17).

But "search warrants are not directed at persons; they authorize the search of places and the seizure of things, and as a constitutional matter, they need not even name the person from whom the things will be seized." Zurcher v. Stanford Daily, 436 U.S. 547, 555 (1978). "The [Fourth] Amendment has not been a barrier to warrants to search property on which there is probable cause to believe that fruits, instrumentalities, or evidence of crime is located, whether or not the owner or possessor of the premises to be searched is himself reasonably suspected of complicity in the crime being investigated." Id. at 549-50.

Here, Utley was found in possession of methamphetamine, and he identified his source as Burke and stated she drives a newer red Lincoln and receives the methamphetamine she sells from "Rod." Utley stated Rod Azzu lived at a utility shop near Folsom and West A Streets and when asked to identify the specific building, pointed out the Folsom Street garage. During surveillance of the garage, the officer saw a newer red Lincoln parked behind the garage at 4:00 a.m. While Mazzulla argues that the vehicle Gratz saw was not owned by Burke—which Gratz would have known had he investigated vehicle registration records—this fact does not undermine a finding of probable cause. Vehicle ownership does not limit who can drive a car: Burke could have been driving the red Lincoln even if she did not own it.

Gratz also saw Scov, another informant of unknown reliability, enter the garage, and when he was stopped after exiting the garage, he had methamphetamine in his possession. Scov stated he was coming from the Folsom Street garage, Rod Azzu's residence. The names "Rod" and "Burke" were names LPD recognized as implicated drug sources, and based on LPD records along with Gratz' own experience, Mazzulla had a criminal record involving methamphetamine possession.

Although the warrant applications submitted by Gratz lacked any showing that Utley and Skov were informants of known reliability, separate informants providing consistent information may serve to corroborate each other, and information provided by an outside source can be supplemented and its reliability corroborated by independent police investigation. United States v. Brackett, 846 F.3d 987, 993 (8th Cir. 2017); United States v. Jackson, 898 F.2d 79, 81 (8th Cir. 1990) (citing United States v. Warner, 894 F.2d 957, 960 (8th Cir. 1990) (holding mutually corroborative tips supplied "substantial basis" for probable cause determination)). An informant with no prior record of providing information to the police may be considered reliable if the statements were against his penal interest and police were able to corroborate some of the information provided. United States v. Allen, 297 F.3d 790, 794 (8th Cir. 2002) (holding that informant with no prior history of providing information to officers provided credible tip sufficient to support probable cause for a search warrant where informant admitted to assisting in defendant's attempt to manufacture methamphetamine and his description of suspect's vehicle and address was corroborated by police investigation).

10

The court finds that under the totality of the facts presented, the Folsom Street garage—"Rod's" apparent residence; a location where Burke, Utley's supplier, appeared to have parked the newer red Lincoln she drove; and the building Scov entered just before he was stopped and found to be in possession of methamphetamine—appeared to be a location where methamphetamine could be found. Gratz' warrant affidavits established a sufficient nexus between the Folsom Street garage and evidence of criminal distribution of methamphetamine. United States v. Garcia-Hernandez, 682 F.3d 767, 771 (8th Cir. 2012) (holding surveillance of known drug users entering and leaving a residence along with cell phone records and the information provided by a confidential informant supported probable cause to search a house).

2) <u>Franks challenge</u>.

Defendant argues the applications to search the Folsom Street garage were invalid because they included false information and concealed material facts, and because several avenues of investigation were either not pursued before applying for a warrant, or the results were not included within the warrant applications.

a. <u>Incomplete investigation</u>.

Defendant's brief includes a litany of topics law enforcement did not address or perhaps investigate before submitting warrant applications to a judge.[2] Defendant claims that without the information responsive to the listed

---

[2] For example, Defendant questions why the affidavit failed to state whether Scov was asked where he had obtained the methamphetamine found on the ground or if he

11

topics, the pre-application investigation was not sufficiently thorough and fails to support a finding of probable cause to search the Folsom Street garage. But a finding of probable cause "does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." United States v. Donnelly, 475 F.3d 946, 954 (8th Cir. 2007).

Moreover, a warrant application cannot be successfully challenged under Franks unless the defendant shows that the affiant officer purposefully concealed clearly critical facts. Conclusory allegations or arguments of what the facts may be, unsupported by any citation to the record, are insufficient to support a Franks challenge. United States v. Stevenson, 727 F.3d 826, 831 (8th Cir. 2013). And merely listing a topic the officers could have investigated before applying for the warrant, without stating what that investigation would have revealed and that the officers knew what that evidence would be, is insufficient to show the officer willfully or recklessly concealed information which would have undermined a finding of probable cause. Hawkins v. Gage Cty., Neb., 759 F.3d 951, 959 (8th Cir. 2014) (finding no Franks violation occurred where the plaintiff failed to show the officer knew the information allegedly omitted from the warrant application and failed to show the information was clearly critical to the question of probable cause); see also United States v. Meling, 47 F.3d 1546, 1554 (9th Cir. 1995) ("For whatever reason, this information [of a recent conviction and history of mental illness] was not contained in the FBI's rap sheet. Defendant disbelieves the FBI, but that disbelief does not amount to the substantial showing required

---

saw anyone distributing controlled substances at 1421 South Folsom Street, why law enforcement failed to investigate and report who was paying for utilities at the garage, and whether anyone reported buying drugs at the Folsom Street garage location or whether short-term traffic was observed at that location. (Filing No. 55, at CM/ECF p. 13-14).

under Franks."); United States v. Miller, 753 F.2d 1475, 1478 (9th Cir.1985) ("It might have been prudent for the federal agents to check on [an informant's] background and criminal record, but their failure to do so is not reckless disregard."); United States v. Walker, No. CR. 06-498-KI, 2007 WL 2156372, at *4 (D. Or. July 26, 2007) (denying a Franks hearing where the defendant failed to show the officers knew the material information allegedly omitted from the warrant application; "Speculation of the [officer's] knowledge is inadequate to show entitlement to a Franks hearing.").

### b. Misstating or concealing known material facts.

Defendant argues the warrant affidavits submitted by Gratz falsely stated: 1) Burke lived with Mazzulla at Folsom Street garage; 2) Mazzulla was the owner of Azzu's Tree Trimming Service; and 3) Mazzulla was subject to an active felony arrest warrant. In addition, Mazzulla argues Gratz purposefully concealed that: 1) Burke did not own the "newer red Lincoln car" Gratz saw near the Folsom Street garage during surveillance; 2) Burke, Utley, and Skov were informants of unknown reliability; 3) Mazzulla was not the owner of Folsom Street garage and Gratz lacked firsthand information indicating Mazzulla was renting the premises or located there; 4) During the first search of the Folsom Street garage, Mazzulla and his girlfriend, Rhonda Meador, exited a motor home parked in the garage, and the motor home appeared to be their residence; 5) Utley stated he had met Mazzulla only twice and did not know much about him; and 6) Utley purchased methamphetamine from Burke at her residence located at 1010 South 10th Street, Lincoln, Nebraska, which is located a substantial distance from the Folsom Street garage. (Filing No. 55, at CM/ECF pp. 6-8, 12, 14).

13

      i.      Informants of unknown reliability.

As to the statements of Utley and Scov, as previously explained, these cross-corroborated statements can be considered reliable even in the absence of any history of providing reliable information. Similarly, even though Burke had no track record of providing reliable information to law enforcement, Burke's statements—that she purchased methamphetamine from Rod at the Folsom Street garage, and knew Rod still had methamphetamine at that location in the gas tank of a motorcycle parked in the garage—were consistent with the statements of Utley and Scov, were against Burke's own penal interest, and were corroborated by Gratz seeing a newer red Lincoln parked behind the Folsom Street garage and a Harley Davidson motorcycle parked within it. Under the circumstances presented, Burke's statements were sufficiently corroborated to be deemed reliable.

There is no merit to Mazzulla's argument that the warrant application misled the signing judge because Gratz failed to state Utley, Scov, and Burke were witnesses of unknown reliability.

      ii.      False or concealed facts about the property, Burke, and Mazzulla.

The challenged search warrants were directed at finding evidence of criminal activity at the Folsom Street garage—without regard to who lived there, who owned the garage, where that person worked, whether he owned his own business, or whether he was the subject of an active arrest warrant. These facts are simply immaterial. For example, while Gratz stated Burke lived in the Folsom

14

Street garage in one affidavit and at 1010 South 10th Street in Lincoln, Nebraska in a separate affidavit, even if the court excludes any reference to Burke living with Mazzulla in the garage, there was still ample probable cause to believe a search of the Folsom Street garage would uncover evidence of criminal activity.

Similarly, omitting that Utley himself was not familiar with Mazzulla and that Utley bought methamphetamine from Burke at her residence, not at the Folsom Street garage, does not undermine finding probable cause to believe evidence of criminal activity may be found in that garage. Finally, Utley's unfamiliarity with Mazzulla does not undermine any conclusion that drugs may be found during a search of the Folsom Street garage.

To summarize, the warrant applications to search the Folsom Street garage showed a nexus between the garage and illegal drug activity, and presented facts supporting a finding of probable cause to search the garage. Even assuming Gratz omitted facts or made false statements within the warrant applications, Defendant has failed to show these misrepresentations or concealments misled the issuing judge or were material to the finding of probable cause. The applications, corrected to add the alleged concealed facts and to correct the alleged misstatements, nonetheless supported a finding of probable cause. And as to facts allegedly missing from the application due to the officers' incomplete investigation, there is no showing that such facts are material or that Gratz willfully or recklessly concealed them. Defendant's motions challenging the warrants as lacking any sufficient probable cause basis, or to suppress the warrants under Franks, should be denied without a hearing.

B.    <u>Scope of the Search</u>.

Defendant argues that although the warrants did not authorize search of Defendant's home, Gratz searched the motor home parked in the Folsom Street garage while knowing it was Defendant's home. Defendant argues the motor home was connected to electrical service, water service, and sewer service. The motor home registration was not current, so it could not be driven, and it contained furnishings and all of the items necessary for use as a residence, all of which was readily apparent from a cursory observation of its exterior.

When a warrant 'specifically mentions' certain structures, it 'authorizes a search of these structures and, by implication, any other vehicles, structures, or property not noticeably separate from them.'" United States v. Pennington, 287 F.3d 739, 744-745 (8th Cir. 2002) (quoting United States v. Schroeder, 129 F.3d 439, 441-42 (8th Cir. 1997)). But in this case, the "vehicle" is a motor home that Defendant was using as a residence. Under such circumstances, the court must determine whether it was "readily capable" of "being used on the highways." California v. Carney, 471 U.S. 386, 392 (1985); see also United States v. Holleman, 743 F.3d 1152, 1158 (8th Cir. 2014). The record does not provide sufficient information to make that determination. A hearing on this issue is necessary.

Accordingly,

IT IS ORDERED:

1)    As to whether the search of the motor home within the garage was an unlawful residential search, and only as to this issue, an evidentiary hearing will be held before the undersigned magistrate

16

judge on January 19, 2018, at 9:00 a.m. in Courtroom #2, United States Courthouse, Lincoln, Nebraska. Two hours have been set aside for this hearing.

2) Defendant, defense counsel, and counsel for the government shall be present at this hearing.

3) Pursuant to NECrimR 12.5, copies of all exhibits expected to be offered into evidence during the hearing, except those to be used for impeachment only, shall be delivered to the chambers of the undersigned at least twenty-four (24) hours before the hearing and, at the outset of the hearing, to the extent reasonably possible, the parties shall provide the undersigned and the courtroom deputy with a written list of all witnesses the parties expect to call.

4) Trial of this case is continued pending the resolution of pretrial motions.

December 20, 2017

                                              BY THE COURT:

                                              *s/ Cheryl R. Zwart*
                                              United States Magistrate Judge