IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>RODNEY P. MAZZULLA,<br><br>　　　　　Defendants. | 4:17CR3089<br><br>FINDINGS, RECOMMENDATION, AND ORDER |

　　　Defendant filed a motion to suppress, arguing: 1) evidence seized when the garage at 1421 South Folsom, Lincoln, Lancaster County, Nebraska (hereafter "the Folsom Street garage") was searched on April 2, 2017 and April 22, 2017 must be suppressed due to false statements within the warrant applications; and 2) the search of the mobile home within the garage exceeded the scope of search authorized by the warrants.

　　　The undersigned magistrate judge previously entered findings and a recommendation to deny Defendant's challenge to the warrants under Franks v. Delaware, 438 U.S. 154, 171 (1978). (Filing No. 76). As to the remaining issue, whether the search of the motor home within the garage was an unlawful residential search, a hearing was held on January 30, 2018. For the reasons stated below, I find that portion of Defendant's motions to suppress, (Filing Nos. 39 and 54), should also be denied.

STATEMENT OF FACTS

　　　A mobile home was parked in the Folsom Street garage when it was searched on April 2, 2017 and April 22, 2017. The mobile home had been

purchased by Defendant six weeks earlier, driven to Lincoln, Nebraska by Defendant, and backed into the Folsom Street garage. The vehicle was not licensed and registered when it was driven to Lincoln or during the garage searches conducted April 2, 2017 and April 22, 2017, the mobile home was parked facing a large garage door. (Exs. C-27; C-36). All tires were attached and inflated. The mobile home was parked closer to one side of the door opening, but there was sufficient clearance on both sides of the mobile home to drive it straight out of the garage. (Exs. C-20; D-8). The garage door opened to an alley which provided access to city streets within Lincoln, Nebraska. (Exs. C-27; C-28; C-31).

The passenger rear wheel of the mobile home was elevated by boards to level it. Using the mobile home's standard equipment, the mobile home was plugged in for electricity, and connected to a water faucet and a sewer line. (Ex. C-9; C-18; D-5). Detaching from utilities required unplugging the electricity, turning off the faucet and detaching the hose, and crawling under the vehicle, sliding a piece of plywood out of the way, and detaching the sewer line three feet below. Being both under the mobile home and covered, the sewer hookup was not readily visible to persons entering the garage.

Furniture and mattresses were stacked in front of the mobile home, all of which were placed there by Defendant and could be moved if the vehicle needed to be driven. (Exs. C-26; D-3). A wicker shelf was on top of it. The whole garage appeared to be used as a highly disorganized and littered storage and vehicle repair location. (Exs. C-9; C-10; C-11; C-12; C-13; C-18; D-1; D-2). While Defendant claims he lived in the mobile home, the visible bed and the fold-down bed within it were being used as shelves for clothing and clutter. (Exs. C-1; D-9; D-10; D-11). Like the remainder of the garage itself, the mobile home was used

for storage and as a workplace, and it provided access to a bathroom, a place to heat food in a crockpot, eat, and perhaps warm up when the remainder of the garage was cold. (Ex. D-12).

## ANALYSIS

Defendant claims the mobile home parked in the garage was Defendant's home, and the residential searches of the mobile home on April 2, 2017 and April 22, 2017 exceeded the scope authorized by the warrants. (Filing No. 55, at CM/ECF pp. 27-32). The warrants authorized law enforcement "to search the detached garage located at 1421 South Folsom Street Lincoln, Lancaster County, Nebraska, the detached garage, and utility shed." (Filing No. 41-1, at CM/ECF p. 4; Filing No. 48-1 at CM/ECF p. 11).

"[W]hen a warrant 'specifically mentions' certain structures, it 'authorizes a search of these structures and, by implication, any other vehicles, structures, or property not noticeably separate from them.'" United States v. Pennington, 287 F.3d 739, 744-745 (8th Cir. 2002) (quoting United States v. Schroeder, 129 F.3d 439, 441-42 (8th Cir. 1997)). The government argues the mobile home was a vehicle and therefore subject to search along with the garage; Defendant argues it was his residence and a separate warrant was necessary before the mobile home could be searched.

As an initial matter, the court is not convinced the mobile home was Defendant's residence. There was nowhere to sleep: Even the fold-down bed was covered with clothing when the officers searched the mobile home. Simply stated, the mobile home appeared no more "lived in" or "residential" than the remainder of the garage. For that reason alone, Defendant's motion should be denied.

Moreover, a mobile home is considered a vehicle if it is "readily capable" of "being used on the highways" and "found stationary in a place not regularly used for residential purposes." United States v. Holleman, 743 F.3d 1152, 1158 (8th Cir. 2014) (quoting California v. Carney, 471 U.S. 386, 392 (1985)). "[A] vehicle's inherent mobility—not the probability that it might actually be set in motion—is the foundation of the mobility rationale. . . ." United States v. Navas, 597 F.3d 492 (2d Cir. 2010). An officer's authority to search a vehicle does not vanish even if the vehicle becomes immobilized. The court need not consider the likelihood the vehicle would actually be moved while an additional warrant is obtained. Michigan v. Thomas, 458 U.S. 259, 261 (1982).

Here, the mobile home was connected to utilities with manufacturer-installed portals and hoses, and with the exception the need to crawl beneath the camper with a screwdriver to unhook the sewer line, the utilities could be disconnected as if the mobile home was parked at a roadside campground. The vehicle had inflated tires, with a functioning engine, and faced a garage door which opened to the alley. While boards were used to lift the right rear area and level the vehicle, they could either be removed or simply driven over to exit the garage. Vehicles parked outside the garage door, and mattresses and furniture placed in front of the mobile home inside the garage, were the only visible barriers to driving away. And as to those barriers, Defendant was fully capable of quickly removing them and driving off in the mobile home. As evidenced by Defendant's ability to drive the mobile home into the garage, the lack of a vehicle registration or license was no real impediment to moving the mobile home.

Under the facts presented, the mobile home was "readily capable" of being driven and was parked in a location—a garage or shed—not regularly used for

residential purposes. Defendant's mobile home was a vehicle and as such, it was subject to search pursuant to the warrant to search the Folsom Street garage. Navas, 597 F.3d at 500 (holding a trailer with at least one axle and a set of wheels, and capable of being attached to a cab and driven away, was inherently mobile "notwithstanding the fact that it was unhitched from the cab that initially transported it to the warehouse"); United States v. Hamilton, 792 F.2d 837 (9th Cir.1986) (holding the warrantless search of a motor home parked in a driveway was a vehicle search where the motor home was not registered and was connected to electricity by an extension cord); State v. Otto, 2013 ND 239, 840 N.W.2d 589 (2013) (holding a camper was a "readily mobile" vehicle though it "had the landing gear down, power cords were plugged in, and no vehicle was hooked up to it;" it "is not a fixed dwelling," "was capable of being mobilized within a very short time," and "was not in a place regularly used for residential purposes" but instead "was in a commercial parking lot").

February 8, 2018.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motions to suppress filed by the defendant (Filing Nos. 39 and 54) be denied in their entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before John M. Gerrard, United States District Judge, in Courtroom 1, United States

6

Courthouse, Lincoln, Nebraska, at 9:00 a.m. on March 12, 2018, or as soon thereafter as the case may be called, for a duration of four (4) trial days. Jury selection will be held at the commencement of trial.

February 8, 2018.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge