# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2732
_____

United States of America

*Plaintiff - Appellee*

v.

Rodney P. Mazzulla

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: June 13, 2019
Filed: August 2, 2019

_____

Before COLLOTON, KELLY, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

    Following a jury trial, Rodney Mazzulla was convicted of conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), possession with intent to distribute 5 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and distribution of and possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).

The district court[1] sentenced Mazzulla to 312 months' imprisonment on each count, served concurrently, followed by concurrent five-year terms of supervised release.

In this appeal Mazzulla alleges a number of errors. He asserts the district court erred when it: (1) denied his motion to suppress the warrant-based searches of his residence; (2) denied his request for a Franks hearing; (3) denied his request for an *in camera* review of Officer Gratz's personnel file; (4) allowed a witness to testify as to an altercation over Mazzulla's Federal Rule of Evidence 403 objection; (5) failed to give a simple possession instruction. Finally, Mazzulla contends that the evidence was insufficient to support his convictions. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

I.    Background

The Lincoln, Nebraska, Police Department ("LPD") began investigating Rodney Mazzulla in July 2015 when it received information from confidential sources that a man named "Rob," who owned a tree-trimming service, was selling methamphetamine. Officer Anthony Gratz contacted Mazzulla claiming to have a fallen tree that needed to be removed and Mazzulla agreed to meet him. During the meeting, Mazzulla admitted to possession of a personal quantity of methamphetamine and consented to a search of his vehicle. During the search Officer Gratz found 3.1 grams of methamphetamine. Mazzulla was arrested and brought to the police station, where he was read a Miranda warning. Mazzulla waived his Miranda rights and agreed to an interview. During the interview, Mazzulla admitted that over the past two years he sold up to two ounces of methamphetamine per week to his employees. Despite these admissions Mazzulla was not indicted in 2015.

---

[1] The Honorable John M. Gerrard, Chief Judge, United States District Court for the District of Nebraska.

In March 2017, Officer Gratz received a confidential tip describing Shawndell Burke's involvement in drug trafficking out of her residence located at 1010 South 10th St. Officer Gratz conducted surveillance of the residence and observed what appeared to be a hand-to-hand drug transaction involving two vehicles. One of the persons involved was Burke. Officer Gratz attempted a traffic stop but Burke fled and was able to avoid arrest.

On April 2, 2017, Officer Gratz received another confidential tip that Troy Utley was selling methamphetamine out of Burke's residence. Later that evening Officer Gratz encountered Utley with methamphetamine on his person and arrested him. On the way to the police station, Utley pointed out a garage at 1421 S. Folsom St. ("Folsom St. garage"), stating Mazzulla was residing there.

At the police station Utley waived his Miranda rights and consented to an interview, during which he stated that Burke regularly kept between a half-pound and two pounds of methamphetamine. Utley identified Mazzulla as Burke's source. Utley also told Officer Gratz that Burke and Mazzulla were living in the Folsom St. garage.

After the Utley interview, Officer Gratz returned to the Folsom St. garage to conduct surveillance, arriving at about 4:00 a.m. Fifteen minutes later Officer Gratz saw Richard Scov leave the garage on a bicycle. Officer Gratz stopped Scov for a traffic violation but before he could make actual contact with him, another officer observed Scov drop something. Officer Gratz retrieved the item, which turned out to be a pouch containing a small amount of methamphetamine. Scov related that he had just left "Rod Azzu's" residence, that "Azzu" lived in a garage, and that he believed "Azzu" was still there. Officer Gratz sought and obtained a search warrant for the Folsom St. garage. Law enforcement executed the warrant at around 7:15 a.m.

Officers entered the garage where they observed a parked camper. Inside the camper they saw people moving about. The officers ordered the people to come out, and Mazzulla and a woman (later identified as Rhonda Meador) stepped out. The officers searched the motor home and found approximately 49 grams of methamphetamine, a pistol, and some drug paraphernalia. Mazzulla and Meador were arrested on suspicion of drug trafficking.

A few days later, Burke retrieved cash from the camper which had been left in the Folsom St. garage and posted bond for Mazzulla and Meador. Burke was arrested in her home on April 21, 2017, and taken to the Lancaster County jail where she waived her Miranda rights and made a statement. Burke told officers that she had been to Mazzulla's residence where she had observed a quantity of methamphetamine in the gas tank of a black motorcycle. Armed with this information, Officer Gratz prepared affidavits supporting warrants for the search of both the 1010 South 10th St. and the 1421 S. Folsom St. residences. In each affidavit, Officer Gratz attested that Burke was living at the respective address for which he was obtaining search warrants, rather than indicating that Burke was residing intermittently at each place. The search of Burke's 1010 South 10th St. residence resulted in the seizure of 85.1 grams of methamphetamine located in Burke's bedroom. The search of the Folsom St. garage was done in the early morning of April 22 and resulted in seizure of 210 grams of methamphetamine found under the hood of Burke's green van parked in the garage.

*Pre-Trial Motions*

Burke and Mazzulla were indicted as co-defendants. Mazzulla was indicted on four counts: (I) conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A); (II) possession with intent to distribute 5 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); (III)

possession of a firearm in furtherance of the drug trafficking crimes charged in counts I and II in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (V) distribution of and possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).[2]

Mazzulla filed a motion to suppress both searches of the Folsom St. garage. He contended the affidavit for the first search warrant failed to establish sufficient probable cause for the issuance of the warrant, and the second warrant improperly relied on fruits of the allegedly illegal first search. Mazzulla also filed a motion for a Franks v. Delaware, 438 U.S. 154 (1978), hearing, claiming that both affidavits contained statements made with reckless disregard of the truth and intentional or reckless omissions that made the affidavits misleading.

A magistrate judge found that the information obtained from confidential informants was sufficiently corroborated in two ways: first, by the officers' investigation, and second, because the informants' statements corroborated each other. While the motions were pending, Mazzulla's counsel was allowed to withdraw as a result of recently discovered conflict. On October 24, 2017, the magistrate judge recommended the district court deny the suppression motion and the motion for a Franks hearing.

Before the recommendation was adopted by the district judge, Mazzulla's new counsel moved to limit the scope of the ruling on the suppression motion and for leave to file additional briefing. The court granted the motion, withdrew the prior findings and recommendation, and allowed additional briefing on the suppression motion with regard to the searches of the Folsom St. garage. After the supplemental

---

[2]Count IV was against Burke and was dismissed as part of her plea agreement (Burke pled guilty and agreed to cooperate in the prosecution of Mazzulla in exchange for the possibility of a reduced sentence).

briefing was complete Mazzulla filed a supplemental motion to suppress and request for a Franks hearing.

In the second motion Mazzulla incorporated all of the original arguments and for the first time asserted that both of the Folsom St. garage search warrants failed to establish a nexus between the drugs sought and the location searched. In seeking a Franks hearing Mazzulla argued that Officer Gratz intentionally omitted material facts from the affidavits and that he made materially false statements. The magistrate judge found that each affidavit established a sufficient nexus, and there was probable cause to search the garage on both occasions. The magistrate judge also found that, assuming Officer Gratz omitted facts or made false statements in the warrant affidavits, Mazzulla "failed to show these misrepresentations or concealments misled the issuing judge or were material to the finding of probable cause." DCD 76 at 15. The magistrate judge found that Mazzulla failed to show that Officer Gratz willfully or recklessly concealed any material facts, and denied the Franks hearing. Finally, the magistrate judge granted an evidentiary hearing on whether the motor home was a vehicle or a residence.

Following a January 30, 2018, hearing the magistrate judge made further findings as to the nature of the camper and recommended that the motion to suppress should be denied because even though the camper did not appear to be a residence it was readily capable of being driven, and fell within the automobile exception as described in United States v. Holleman, 743 F.3d 1152, 1158 (8th Cir. 2014). The magistrate judge continued to recommend denial of a Franks hearing. The district court adopted the magistrate judge's findings, recommendations, and orders.

*Trial*

Mazzulla filed a motion seeking disclosure of Brady material or an *in camera* review of Officer Gratz's personnel file. The motion was based primarily on two civil

-6-

lawsuits filed against Officer Gratz alleging that while working on drug cases he had engaged in sexual relationships with cooperating witnesses, manipulated those relationships to plant evidence, and participated in an unlawful search resulting in the seizure of $224,000. Officer Gratz testified that he was never disciplined by LPD for credibility matters or the matters surrounding the lawsuits, nor was he asked to resign. The district court found that Officer Gratz's character or truthfulness was not called into question and sustained the government's objection to Mazzulla's motions.

At trial, Burke testified that she saw Mazzulla "hit Rhonda in the face," over "really nothing." The court sustained Mazzulla's objection to the testimony as general "bad act" evidence unrelated to drug activity, and instructed the jury to disregard the testimony. Burke later described another situation where Mazzulla fought with Rhonda over drug money. Mazzulla's attorney did not object at the time, but he later asked the court to direct the jury to disregard Burke's answer to this question because it was unfairly prejudicial. The court overruled the motion, finding that it was directly related to drugs and money. During the course of trial, several other witnesses testified about their drug-related interactions with Mazzulla, most of whom had bought various quantities of methamphetamine from him.

At the close of evidence, Mazzulla requested that the jury be provided a simple possession jury instruction, instead of possession with intent to distribute as to Count II (49 grams of methamphetamine found during the first search of the garage). The district judge denied the request, finding that: 49 grams was more than a personal quantity; there was evidence of distribution found during the search; and there was testimony about Mazzulla's involvement in distribution. The jury found Mazzulla guilty on Counts I, II, and V. The court sentenced Mazzulla to 312 months on each count concurrently, with five years of supervised release.

## II. Discussion

### A. Motions to Suppress

"We review the district court's factual determinations in support of its denial of a motion to suppress for clear error and its legal conclusions de novo." United States v. Johnson, 848 F.3d 872, 876 (8th Cir. 2017) (quoting United States v. Johnson, 601 F.3d 869, 872 (8th Cir. 2010)). We will reverse a decision to deny a motion to suppress only where the district court has made a decision that is not supported by substantial evidence, is based on an erroneous interpretation of the law, or is, viewing the entire record, clearly mistaken. Id. (citing Johnson, 601 F.3d at 872).

"A supporting affidavit establishes probable cause to issue a search warrant if it 'sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched.'" United States v. Brackett, 846 F.3d 987, 992 (8th Cir. 2017) (quoting United States v. Snyder, 511 F.3d 813, 817 (8th Cir. 2008)). We determine whether or not probable cause supports the issuance of the warrant based upon a "common-sense reading of the entire affidavit." United States v. Seidel, 677 F.3d 334, 338 (8th Cir. 2012) (quoting United States v. Sumpter, 669 F.2d 1215, 1218 (8th Cir. 1982)). "We will not disturb a court's finding of probable cause [to issue a search warrant] 'unless there was no substantial basis for that finding.'" Brackett, 846 F.3d at 992 (quoting United States v. Montgomery, 527 F.3d 682, 686 (8th Cir. 2008)).

### 1. April 2 Warrant

Mazzulla challenges the April 2 search warrant claiming there was no evidence of a nexus between the contraband and the Folsom St. garage. In Mazzulla's view the affidavit has "sparse information related to 1421 S. Folsom Street." The April 2

-8-

affidavit statements tied to the Folsom St. garage included the following information: (1) Utley stated that Burke was his dealer and that she received her methamphetamine from Mazzulla; (2) Utley stated that Burke and Mazzulla were living together at a utility shop near Folsom and West A streets; (3) Utley identified the Folsom St. garage as Mazzulla's residence; (4) Mazzulla had a tree-trimming business called "Azzu Tree Trimming Service," where Burke was employed; (5) Scov was found with methamphetamine and paraphernalia after Officer Gratz observed him leaving the garage; and (6) Scov stated he was coming from "Rod Azzu's" residence, a.k.a. the Folsom St. garage. This information provides a substantial basis for a finding of probable cause to issue a search warrant of the Folsom St. garage.

### 2.  *Separate Warrant for the Camper*

Mazzulla claims that the search of the camper required a separate warrant because it was his residence, which was separate and apart from the Folsom St. garage. The magistrate judge recommended Mazzulla's motion to suppress be denied, in part because it did not appear that the camper was any more Mazzulla's residence than the garage itself.

Mazzulla attempts to differentiate the garage from the camper by pointing out that a garage is not typically used as a residence. However, the photographs of the garage show that it was filled with living utensils, furniture, clothing, and debris that would result from someone living in it. The district court's adoption of the magistrate judge's factual finding that "the mobile home appeared no more 'lived in' or 'residential' than the remainder of the garage" was not clearly erroneous.

Mazzulla argues that United States v. Schroeder, 129 F.3d 439 (8th Cir. 1997), supports the proposition that "noticeably separate" does not mean "physically separate" from the parcel being searched. However, Schroeder relies precisely on physical separation for distinguishing structures for Fourth Amendment purposes:

-9-

> In Dunn, a barn, separated by a fence from the residence, was found to be outside the residence's curtilage and therefore outside the protection of the Fourth Amendment. If a barn, used by the inhabitants of a nearby residence but otherwise uninhabited, and separated from it by a mere fence, is, for purposes of Fourth Amendment analysis, a separate entity, then surely two residences, separated by barbed wire and maintaining separate addresses, are as well.

Schroeder, 129 F.3d at 442 (citation omitted) (discussing United States v. Dunn, 480 U.S. 294, 296, 305, (1987)). Here the camper was not separated from the garage in any manner. There was no fence, curtilage, or any other boundary demarcations. The presence of all of the furniture, clothing and living debris tied both the camper and the garage together. The photographs show that the space was used, as a whole, to live in. The camper was located fully inside the Folsom St. garage for which the search warrant was issued.

Mazzulla also argues that the magistrate judge misapplied the "vehicle exception" test in California v. Carney, 471 U.S. 386 (1985), which applies to warrantless searches of motor homes. But this aspect of the ruling is irrelevant. In United States v. Pennington, 287 F.3d 739 (8th Cir. 2002), we held that "[w]hen a warrant 'specifically mentions' certain structures, it 'authorizes a search of these structures and, by implication, any other vehicles, structures, or property not noticeably separate from them.'" Id. at 744-45 (quoting Schroeder, 129 F.3d at 441-42). Because the camper was not noticeably separate from the garage, it was covered by the search warrant, whether or not it was a vehicle for Fourth Amendment purposes.

-10-

3. *April 22 Warrant*

In Murray v. United States, 487 U.S. 533 (1988), the Supreme Court held that the independent source doctrine does not apply if "the agents' decision to seek the warrant was prompted by what they had seen during the initial [illegal] entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." Id. at 542 (footnote omitted). Mazzulla argues that Murray prohibits Officer Gratz from including information gained from the allegedly illegal April 2 search to support the April 22 warrant and that, after it is redacted, there is no probable cause to support the April 22 warrant. Because we find that the April 2 search was legally conducted pursuant to a valid search warrant, the information Officer Gratz gained from the April 2 search could be relied upon for the April 22 search warrant.

B. *Franks Hearing*

"We review denial of a Franks hearing for abuse of discretion." United States v. Gonzalez, 781 F.3d 422, 430 (8th Cir. 2015) (citing United States v. Arnold, 725 F.3d 896, 898 (8th Cir. 2013)). To succeed on a motion for a Franks hearing, a defendant must make "'a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit' and that the allegedly false statement was necessary to the finding of probable cause." Brackett, 846 F.3d at 993 (quoting Franks, 438 U.S. at 155-56).

Mazzulla argues that Officer Gratz made a false or reckless statement in his affidavits when he stated that Burke was living at both the 10th St. address and the Folsom St. garage. We do not believe these statements are necessarily inconsistent–a person can live at more than one address. This is particularly true when, as Officer Gratz explained at trial, people are on the run from police and likely aware that the

-11-

police have raided their legal residence. More importantly, this was a search warrant looking not for Burke, but methamphetamine. Whether Burke was living at one address or the other was of far less consideration than Burke's presence at the two addresses. Even if "living" is redacted, there remains sufficient probable cause to issue the warrant. Any potentially misleading facts in the affidavits for the search warrant were immaterial to the granting of the search warrant.

Mazzulla also argues that "his Supplemental Application for a Franks hearing contained additional factual information that was apparently not addressed or considered for Franks purposes." Alternatively, Mazzulla argues that "no ruling was made at all." Mazzulla argues that either way, the district court violated Fed. R. Crim. P. 12(d). See id. ("The court must decide every pretrial motion before trial unless it finds good cause to defer a ruling. . . . When factual issues are involved in deciding a motion, the court must state its essential findings on the record."). This argument is factually misleading. The magistrate judge addressed the request for the Franks hearing at length in her order and ultimately concluded that "Defendant's motions challenging the warrants as lacking any sufficient probable cause basis, or to suppress the warrants under Franks, should be denied without a hearing." DCD 76 at 11-15.

C.    In Camera *Review of Gratz's Personnel File*

We review a district court's denial to conduct an *in camera* review of potentially exculpatory or impeachment materials for abuse of discretion. United States v. Van Brocklin, 115 F.3d 587, 594-95 (8th Cir. 1997) (citing United States v. Willis, 89 F.3d 1371, 1381 n.6 (8th Cir. 1996)).

At trial, Mazzulla filed a motion for disclosure or *in camera* review of Officer Gratz's personnel file based on two prior lawsuits against him surrounding prior investigations, which "suggest that Brady and Kyles information is likely to exist within Gratz's LPD personnel file." In its response to this motion, the government

-12-

requested that the LPD review Officer Gratz's personnel file for Giglio impeachment information. The file was reviewed by the LPD, which reported that no such information was contained therein.

As the district court observed, "it is the government's duty to determine what evidence in its possession is subject to Brady/Giglio disclosures." DCD 136 at 2 (citing United States v. Pou, 953 F.2d 363, 366 (8th Cir. 1992); United States v. Presser, 844 F.2d 1275, 1281 (6th Cir. 1988)). "After all, if the government fails to disclose relevant material, 'it acts at its own peril.'" Id. (quoting Presser, 844 F.2d at 1281). Mazzulla points to a number of facts to support his claim. Mazzulla claims that Officer Gratz was a named defendant in two other lawsuits regarding his conduct as a police officer and "was no longer employed by the Lincoln Police Department at the time of trial." Mazzulla's motion rested on mere speculation that Officer Gratz's file contained exculpatory and/or impeaching information, which is not enough to compel disclosure or *in camera* review. See Van Brocklin, 115 F.3d at 594 (citing Pou, 953 F.2d at 367). The district court did not abuse its discretion in denying an *in camera* review of Officer Gratz's personnel file.

  D.  *Rule 403 Ruling*

"We give great deference to the district court's Rule 403 determinations and will reverse its evidentiary rulings only for a 'clear and prejudicial abuse of discretion.'" United States v. King, 898 F.3d 797, 805 (8th Cir. 2018) (quoting Quigley v. Winter, 598 F.3d 938, 946 (8th Cir. 2010)). "[A] district court's discretion in determining the admissibility of evidence is 'particularly broad in a conspiracy trial.'" Id. (alteration in original) (quoting United States v. Darden, 70 F.3d 1507, 1539 (8th Cir. 1995)).

The government argues that Burke's testimony concerning the altercation with Rhonda Meador was relevant to the conspiracy charge because it shows "the lengths

-13-

to which [Mazzulla] would go to protect the conspiracy and maintain his control over the other members of the conspiracy." Mazzulla claims the testimony appears to simply describe a fight over money. The relevant testimony is tied to drug money:

> Q. Did you ever see Mr. Mazzulla become physical with Rhonda during . . . arguments about drugs or drug money?
>
> A. Yes, I have.
>
> Q. Where did that happen?
>
> A. Driving down the road.
>
> . . .
>
> Q. Okay. When did this . . . incident happen?
>
> A. We were driving in the flatbed in . . . one of the work vehicles we were driving in, and—they fight about money quite a bit, but this was a incident (sic)—we about had an accident over it. . . . [H]e's very . . . particular about his money, and she had used money to go—she had paid one of the individuals that were cutting wood that day, and—and she wasn't supposed to, and he had wanted it for something else. . . . Well, he needed that money. Well, and . . . he was yelling, they were fighting over it.

DCD 164 at 265-66.

Burke answered a question about whether Mazzulla had become physical with Meador during an argument about drugs or drug money. Burke's answer is reasonably interpreted as responsive to this question. The district court did not abuse its broad discretion in admitting the evidence. See supra King, 898 F.3d at 805.

-14-

This testimony played little role in the trial. The other evidence provides overwhelming support for Mazzulla's conviction on Counts I, II, and V—all of which were methamphetamine possession and distribution charges. This evidence included large amounts of methamphetamine and distribution paraphernalia, testimony from multiple sources about purchasing methamphetamine from Mazzulla, and even Mazzulla's own admission to police that he had distributed methamphetamine. Given the amount of largely uncontroverted evidence, Burke's testimony likely had little impact on the jury's verdict.

### E. Simple Possession Jury Instruction

"A defendant is entitled to a properly requested lesser-included offense instruction 'if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.'" United States v. Almeida-Olivas, 865 F.3d 1060, 1064 (8th Cir. 2017), cert. denied, 138 S. Ct. 529 (2017) (quoting United States v. Lasley, 832 F.3d 910, 912 (8th Cir. 2016)). A defendant is entitled to an instruction on a lesser-included offense if:

> (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) *there is some evidence which would justify conviction of the lesser offense;* (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense; and (5) there is mutuality, i.e., a charge may be demanded by either the prosecution or the defense.

United States v. Parker, 32 F.3d 395, 400-01 (8th Cir. 1994) (emphasis in original) (quoting United States v. Thompson, 492 F.2d 359, 362 (8th Cir. 1974)). "We review for abuse of discretion the district court's decision not to give a lesser-included-offense instruction." Almeida-Olivas, 865 F.3d at 1064 (citing Lasley, 832 F.3d at 913).

-15-

Mazzulla argues he was entitled to jury instructions for the lesser-included offense of simple possession. The district court determined that the evidence did not support simple possession given the abundance of distribution evidence against him. In particular the trial court noted: (1) an amount greater than a personal use quantity; (2) plastic baggies, rubber bands, drug paraphernalia, a weight scale, and seized money; and (3) lengthy testimony about distribution from witnesses who were not accomplices. We agree. See United States v. Ponce, 703 F.3d 1129, 1132 (8th Cir. 2013) (possession of 28.28 grams of ninety-five percent pure methamphetamine along with a scale, knife, and cash, "goes a long way toward showing" an intent to distribute); United States v. Milk, 281 F.3d 762, 770 (8th Cir. 2002) (overwhelming evidence of intent to distribute included a quantity inconsistent with personal consumption, a scale used to weigh marijuana, two money order receipts, the package containing the marijuana, and two stacks of U.S. currency). The court did not abuse its discretion in declining to give a simple possession instruction.

### F. *Sufficiency of the Evidence*

"We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Lewis, 895 F.3d 1004, 1008 (8th Cir. 2018) (quoting United States v. Trejo, 831 F.3d 1090, 1093 (8th Cir. 2016)). "Reversal is appropriate only where a reasonable [fact finder] could not have found all the elements of the offense beyond a reasonable doubt." Id. at 1008-1009 (alteration in original) (quoting Trejo, 831 F.3d at 1093-94).

Mazzulla argues that the government's case on the conspiracy charge "was convoluted and disjointed," and the witnesses lacked credibility. Credibility is a factual determination for the jury to decide, as is the coherence of the government's case. An overwhelming body of evidence supported convictions on Counts I, II, and

-16-

V. Viewing the record in the light most favorable to the government, we are satisfied that the evidence supports the verdict on every count.

## III. Conclusion

For the foregoing reasons, we affirm the district court's ruling.

_____