IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:17-CR-3089 |
| vs. | MEMORANDUM AND ORDER |
| RODNEY P. MAZZULLA, | |
| Defendant. | |

This matter is before the Court upon initial review of the pro se motion to vacate under 28 U.S.C. § 2255 (filing 232) filed by the defendant, Rodney Mazzulla. The motion was timely filed less than 1 year after the defendant's conviction became final. *See* § 2255(f). The Court's initial review is governed by Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, which provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

A § 2255 movant is entitled to an evidentiary hearing unless the motion and the files and records of the case conclusively show the movant is entitled to no relief. § 2255(b); *Sinisterra v. United States*, 600 F.3d 900, 906 (8th Cir.

2010). Accordingly, a motion to vacate under § 2255 may be summarily dismissed without a hearing if (1) the movant's allegations, accepted as true, would not entitle the movant to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact. Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995); see also Sinisterra, 600 F.3d at 906.

## I. BACKGROUND

The defendant was indicted in 2017 on one count of conspiring to distribute methamphetamine, two counts of possessing methamphetamine with intent to distribute it, and one count of possessing a firearm in furtherance of a drug trafficking crime. Filing 1. His counsel filed a motion to suppress and request for a *Franks* hearing, asserting that the affidavits provided by Officer Anthony Gratz, supporting the search warrants that led to the defendant's arrest, contained false statements.[1] Filing 39; *see Franks v. Delaware*, 438 U.S. 154 (1978). Specifically, the motion asserted that an affidavit falsely stated that the defendant and his co-defendant, Shawndell Burke, lived together in one of the locations searched—an address on Folsom Street in Lincoln. Filing 39 at 3; filing 40 at 10. A supplemental motion further argued that the alleged falsehoods in the affidavits related to statements made by Troy Utley about Burke. Filing 54 at 2; filing 55 at 7-9.

---

[1] The defendant was appointed counsel—initially, the federal public defender, but that office had to withdraw shortly after filing the motion to suppress, and CJA counsel was appointed. *See* filing 43. CJA counsel pursued the motion to suppress and application for a *Franks* hearing, filed a supplemental motion, and eventually tried the case and represented the defendant on appeal. The allegations of ineffective assistance of counsel in the defendant's § 2255 motion all relate to the performance of his CJA counsel.

The Magistrate Judge, however, found those alleged falsehoods to be immaterial. Filing 76 at 14. She explained:

> To summarize, the warrant applications to search the Folsom Street garage showed a nexus between the garage and illegal drug activity, and presented facts supporting a finding of probable cause to search the garage. Even assuming Gratz omitted facts or made false statements within the warrant applications, Defendant has failed to show these misrepresentations or concealments misled the issuing judge or were material to the finding of probable cause. The applications, corrected to add the alleged concealed facts and to correct the alleged misstatements, nonetheless supported a finding of probable cause. And as to facts allegedly missing from the application due to the officers' incomplete investigation, there is no showing that such facts are material or that Gratz willfully or recklessly concealed them. Defendant's motions challenging the warrants as lacking any sufficient probable cause basis, or to suppress the warrants under Franks, should be denied without a hearing.

Filing 76 at 15. The defendant's counsel objected to that finding, filing 102 at 3, but the Court overruled that objection and adopted the Magistrate Judge's findings and recommendation, filing 104.

The case proceeded to a jury trial, at which Gratz testified. Filing 163 at 20. Gratz described the investigation that occurred after the defendant was first implicated in methamphetamine trafficking in 2015 by a confidential informant. *See* filing 163 at 24-32. Gratz explained that after identifying the defendant as a suspect, he had made an appointment with the defendant's tree-

- 3 -

trimming business under false pretenses and then identified himself as a police officer, after which the defendant admitted to possessing a user quantity of methamphetamine. Filing 163 at 28-35. The defendant was arrested and, when questioned, admitted to selling methamphetamine. Filing 163 at 35-50.

Gratz then testified that in 2017, he was still investigating drug trafficking cases when he received information that methamphetamine was being sold from a garage on Folsom Street. Filing 163 at 51. Separately, he made contact with Utley after receiving a tip that Utley would be in possession of methamphetamine, which proved true. Filing 163 at 53-55. Gratz obtained a search warrant for the Folsom Street garage, which was executed on the morning of April 2, 2017. Filing 163 at 57. Police found, among other things: the defendant, drug paraphernalia, methamphetamine, cash and prepaid credit or gift cards, several cellphones, and firearms. Filing 163 at 58-93. The defendant was arrested on an outstanding warrant. Filing 163 at 59.

Later that month, Gratz was called to a residence on 10th Street in Lincoln. Filing 163 at 94. The owner of the residence had "express[ed] some concerns" with someone who was staying at the residence: Burke. Filing 163 at 94. And, Gratz testified, Burke was "associated with" a red Lincoln Town Car that had been parked near the Folsom Street address on April 2. Filing 163 at 93-94. A warrant was obtained and executed at the 10th Street address where police seized methamphetamine and drug paraphernalia. Filing 163 at 98-103. Burke was arrested and, after questioning her, obtained a second search warrant for the Folsom Street garage. Filing 163 at 103. More drug paraphernalia and a larger bag of methamphetamine was found concealed in a vehicle engine compartment. Filing 163 at 104-08.

The defendant's counsel cross-examined Gratz regarding purported falsehoods in the affidavits supporting his search warrant applications. Filing

164 at 26-35. Specifically, counsel questioned Gratz about whether Burke had actually been living at the Folsom Street address and whether the red Lincoln Town Car she was said to have been driving actually belonged to her. Filing 164 at 29-35, 60. Gratz admitted that some of the statements in his affidavit weren't "described [] the best I could have." Filing 164 at 35. And Burke testified on cross-examination that she had never owned or driven a red Lincoln. Filing 164 at 157-158.

Nonetheless, the defendant was convicted of conspiring to distribute or possess with intent to distribute 50 grams or more of methamphetamine, possessing 5 grams or more of methamphetamine on or about April 2, 2017 with intent to distribute it, and possessing 50 grams or more of methamphetamine on or about April 21, 2017 with intent to distribute it. Filing 149 at 2-3, 5; *see* filing 145 at 14, 17. He was acquitted of possessing a firearm in furtherance of a drug trafficking offense. Filing 149 at 4. The Court sentenced him to three concurrent sentences of 312 months' imprisonment each. Filing 176.

Through the same counsel, the defendant appealed. Filing 178. He asserted several issues on appeal, among which were the denial of his motion to suppress and denial of a *Franks* hearing. Appellant Brief at 4-5, 22-50, *United States v. Mazzulla*, 932 F.3d 1091 (8th Cir. 2019), (No. 18-2732), 2018 WL 5849429. The Eighth Circuit was unpersuaded, however, finding sufficient evidence to support the search warrants, and that the evidence was sufficient to support the search warrants even if any misleading statements in the affidavits were redacted. *Mazzulla*, 932 F.3d at 1098-1100. The Court of Appeals affirmed the defendant's convictions and sentences. *Id*. at 1094.

## II. DISCUSSION

The defendant claims ineffective assistance of trial and appellate counsel in several respects. To establish a claim of ineffective assistance of counsel, the defendant must show that his attorney's performance was deficient and that this prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance can be shown by demonstrating that counsel's performance fell below an objective standard of reasonableness. *Id.* at 688. However, the Court's scrutiny of counsel's performance is highly deferential, because the Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689.

To satisfy the prejudice prong of *Strickland*, the defendant must show that counsel's error actually had an adverse effect on the defense. *Gregg v. United States*, 683 F.3d 941, 944 (8th Cir. 2012). The defendant must do more than show that the errors had some conceivable effect on the outcome of the proceeding. *Id.* Rather, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A "reasonable probability" is less than "more likely than not," but it is more than a possibility; it must be sufficient to undermine confidence in the outcome of the case. *Paul v. United States*, 534 F.3d 832, 837 (8th Cir. 2008).

### 1. FAILURE TO MOVE FOR MIDTRIAL *FRANKS* HEARING

The defendant's first claim is that "[t]rial counsel rendered ineffective assistance when he failed to file a mid or post trial motion for a Franks hearing after testimony elicited at trial demonstrated conclusively that Gratz's averments in the search warrant affidavits were made with reckless disregard for the truth or were intentionally misleading." Filing 232 at 4. He argues that

counsel should have asked (again) for a *Franks* hearing after Gratz and Burke testified at trial. *See* filing 232 at 28-34.

But there was no reason to believe that a mid-trial request would have fared any better than the motion counsel had filed before trial and that the Court had denied. The defendant points to purported inconsistencies between Utley's custodial statement and Gratz's testimony, but the Court had Utley's statement when its pretrial determinations were made. *See* filing 57-4. The only arguable addition was Burke's statement that she hadn't been driving a red Lincoln—but that didn't change anything about Utley's custodial statement or the subsequent investigation that resulted in the warrant.²

If, indeed, Burke never drove a red Lincoln, that might mean some of the information underlying the search warrant was *wrong*. But that's not enough to succeed on a *Franks* challenge: rather, a defendant must show (1) that facts were omitted with the intent to make, or in reckless disregard of whether they made, the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause. *United States v. Miller*, 11 F.4th 944, 952 (8th Cir. 2021). Burke's statement, even if true, wouldn't demonstrate that Gratz intentionally or recklessly misrepresented Utley's statements on the subject. And contrary to the

---

² The defendant takes a slightly different tack in his reply brief, asserting that the critical testimony at trial was that "for the first time, Agent Gratz testified that the person of interest was Defendant Burke and not [the defendant]." Filing 241 at 2. That overstates Gratz's trial testimony somewhat—he just said that when he first interviewed Utley, Burke "was my primary person I was investigating with that case," but that's not the same as saying that the defendant *wasn't* a suspect. *See* filing 164 at 31-32. And that doesn't contradict the affidavit for search warrant, which said that Gratz was "involved with an active narcotics investigation involving [the defendant,] Shawndell Burke[], and the detached garage [on Folsom Street]." Filing 41-1 at 6.

defendant's argument, the red Lincoln was hardly the key to this case: the defendant and the Folsom Street garage had been identified by two separate informants as a location where methamphetamine could be found, and other information corroborated at least some of their statements. *See* filing 76 at 10-11. Counsel was not ineffective in failing to reassert his request for a *Franks* hearing, nor is there any indication of prejudice, in the absence of any reason to believe that the request would have fared better than it already had.

### 2. FAILURE TO CALL UTLEY

Next, the defendant argues that "[t]rial counsel rendered ineffective assistance when he failed to interview and call Utley as a witness to establish the support for the Franks hearing." Filing 232 at 5. The gist of the defendant's argument is that counsel should have interviewed Utley and then, after Gratz was cross-examined at trial, called Utley as a witness to impeach Gratz's testimony. *See* filing 232 at 34-37.

But to begin with, the defendant really has no idea what Utley would have said. *See* filing 232 at 34-37. He claims he "was sure that Utley would discredit Gratz's version of events," filing 241 at 5, but he doesn't indicate what Utley would actually have said or how he knows Utley would have said that. Rather, the defendant contends that "it was incumbent upon counsel to at least interview Utley and determine what Utley did or did not tell Gratz" and that based on Gratz's testimony, "Utley was required to testify or to clarify Gratz's statements[.]" Filing 232 at 34-35. So the defendant's allegations do not establish that he was actually prejudiced and, even taken as true, do not entitle him to relief. *See Engelen*, 68 F.3d at 240.

Furthermore, the defendant's theory of prejudice relies on the assumption that, even if Utley had been ready and willing to contradict Gratz, that he would have been allowed to do so. By the defendant's own admission,

- 8 -

> Utley said very little about [the defendant] during the interview, other than he met [the defendant] only a couple of times, knew very little about him, and was told by Burke that she got methamphetamine from [the defendant]. Utley had no first-hand knowledge of [the defendant], never inferred that he ever dealt with [the defendant] or witnessed [the defendant] selling drugs and his only information concerning [the defendant] was hearsay statements and would not have been admissible at trial in any event.

Filing 232 at 36. So, Utley would have had very little relevant testimony to offer at the defendant's trial, at which the primary issue was whether the defendant was selling methamphetamine.

Gratz mentioned Utley only briefly during direct examination while describing the investigation that led to the first search warrant at the Folsom Street address. *See* filing 164 at 53-56. It was defense counsel who cross-examined Gratz in far more detail about his dealings with Utley, in service of the argument that Utley didn't really know or say much about the defendant directly. *See* filing 188 at 24-25. Generally, the defense strategy was to pin the large stash of methamphetamine eventually found at the Folsom Street address on Burke, instead of the defendant. *See* filing 188 at 28-29.

So, the defendant's argument now is essentially that counsel should have put Utley on the stand to present extrinsic evidence of Gratz's conduct for purposes of impeachment. That's not permissible. *See United States v. Miller*, 91 F.3d 1160, 1163 (8th Cir. 1996). Moreover, given the specific statements at issue, the effect would have been to connect the red Lincoln to the defendant, and attenuate Burke's connection to both the red Lincoln and the Folsom Street address. It's difficult to see how any effect on Gratz's credibility would

have been worth severing the connection between the Folsom Street address at which the defendant was living (and the large bag of methamphetamine found there) and the only other plausible person to blame for it.

Simply put, "it was an objectively reasonable decision to refrain from further interviewing or calling a witness who had no probative evidence to offer, and [the defendant] suffered no prejudice." *United States v. Williams*, 562 F.3d 938, 941 (8th Cir. 2009). The defense strategy to blame Burke for the large stash of methamphetamine was entirely reasonable. It was even more reasonable not to proffer inadmissible impeachment evidence that, if it *had* been admitted, would have undercut that strategy. And in any event, the defendant was not plausibly prejudiced by that choice.

### 3. FAILURE TO MOVE FOR MISTRIAL DUE TO LEADING QUESTIONS

The defendant's third claim is that "[t]rial counsel rendered ineffective assistance when he failed to object and request a mistrial, thus preserving the issue for appeal, on the prosecutor's continual misconduct of leading most government witnesses' testimony." Filing 232 at 7. The argument in his brief is broader, claiming that counsel was ineffective both in failing to object to leading questions and then failing to move for a mistrial.

It is true that leading questions should not be used on direct examination except as necessary to develop the witness's testimony. Fed. R. Evid. 611(c). But "the matter clearly falls within the area of control by the judge over the mode and order of interrogation and presentation and accordingly is phrased in words of suggestion rather than command." *United States v. Grassrope*, 342 F.3d 866, 869 (8th Cir. 2003) (quoting Rule 611 advisory committee's note). So, the use of leading questions is a matter left to the discretion of the district court. *United States v. Nambo-Barajas*, 338 F.3d 956, 962 (8th Cir. 2003); *United States v. Butler*, 56 F.3d 941, 943 (8th Cir. 1995).

And the defendant's list of supposedly leading questions isn't impressive. *See* filing 232 at 38-42. Some aren't leading questions at all: A question is not leading just because it can be answered "yes" or "no"—rather, the test of a leading question is whether it suggests or indicates the particular answer desired. *See United States v. Wright*, 540 F.3d 833, 844 (8th Cir. 2008); *De Witt v. Skinner*, 232 F. 443, 445 (8th Cir. 1916). Many of the defendant's examples do not. *See* filing 232 at 38-42.[3]

Nor were any of the arguably leading questions especially objectionable. To begin with, leading questions used to elicit information on preliminary matters are permitted. *United States v. Londondio*, 420 F.3d 777, 789 (8th Cir. 2005). And none of the questions concerned particularly controverted matters. There's no reason to believe that, had an objection been raised to the form of any question, the same information wouldn't have eventually been adduced.

The defendant's argument for a mistrial rests on a series of unwarranted assumptions: that had counsel objected, the objections would have been sustained; that had an objection been sustained, the prosecution would have continued asking leading questions; and that eventually, the Court would have found those questions to warrant a mistrial. But the power to declare a mistrial "ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Renico v. Lett*, 559 U.S. 766, 774 (2010). Nothing the defendant has alleged suggests that such circumstances were present here, or would have been present had counsel objected more.

---

[3] The defendant does suggest that "[t]here are many more instances of leading witness [sic] that were never unchallenged [sic] apart from these samples," but that's not how this works: the defendant bears the burden to prove each ground entitling relief, *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019), and the Court isn't obliged to scour the record searching for unidentified errors.

The defendant hasn't demonstrated that counsel was deficient in failing to object to questions that weren't objectionable, or in deciding not to assert objections that would only have served, as a practical matter, to disrupt the proceedings. Nor has he shown that he was prejudiced by those decisions.

### 4. FAILURE TO OBJECT TO LEADING IDENTIFICATION QUESTIONS

The defendant's next claim is related: he alleges that "[t]rial counsel rendered ineffective assistance when he failed to request a mistrial after the AUSA led witness' testimony to testify that [the defendant] was sitting next to defense counsel [] or at the defense table." Filing 232 at 8. He points to several instances in which he claims the prosecution asked leading questions prompting the witnesses to identify the defendant in the courtroom. Filing 232 at 43-45; *see* filing 163 at 118; filing 164 at 129, 200; filing 165 at 75.

There is no merit to the defendant's argument. To begin with, all of the questions could be answered "yes" or "no," but none of them suggested what the answer should be. *See Wright*, 540 F.3d at 844. Beyond that, however: this was not a case in which bystander eyewitness testimony was being adduced to identify the perpetrator of a crime. Each of the witnesses was acquainted with the defendant, and he doesn't claim otherwise. Each witness said—before the "leading" question was asked—that they knew the defendant and that they saw him in the courtroom. Most of them described his clothing before indicating his location. It's simply not credible that, had counsel objected, the witnesses would somehow have been unable to find him. Nor is it possible that, had counsel moved for a mistrial, the Court would have granted it.

The prosecution's questions were, in fact, anodyne attempts to create a clear record. Counsel was not deficient in declining to object to those questions, nor was the defendant remotely prejudiced by it.

### 5. FAILURE TO IMPEACH GRATZ WITH UTLEY'S STATEMENT

The defendant's final argument with respect to the performance of trial counsel is that counsel "rendered ineffective assistance by failing to impeach Gratz with Utley's mirandized arrest video showing that Utley had made statements that Burke's methamphetamine supplier was a 'black guy named plug from Omaha.'" Filing 232 at 14.

It's not clear what the defendant means by "impeach." Nothing in Gratz's search warrant applications was inconsistent with the possibility of Burke having another supplier. Gratz did testify at trial that Utley indicated "he believed [the defendant] to be Shawndell Burke's source," filing 164 at 55-56, but that too isn't inconsistent with Burke having another source. And, in fact, Burke herself testified at trial that she (1) obtained methamphetamine from the defendant to resell, and (2) had another supplier in Omaha, who had also supplied methamphetamine to the defendant. Filing 164 at 73-87, 100-105, 116, 159. (It would hardly be surprising if a Lincoln police officer did more to pursue a Lincoln drug source than an alleged source in another jurisdiction.)

So, Utley's statements wouldn't have been proper impeachment, and certainly weren't otherwise admissible—Utley's opinion about Burke's source lacked foundation and represented inadmissible hearsay. Counsel was not deficient in failing to bring it up. Moreover, given that Burke herself admitted having a source in the Omaha area—a black man, consistent with Utley's statement—it's difficult to see how the defendant was prejudiced.

### 6. FAILING TO CORRECT ALLEGED MISSTATEMENTS TO APPELLATE PANEL

The defendant also questions the performance of counsel on appeal: first, he asserts that "counsel rendered ineffective assistance when he failed to clarify to the appellate court during oral arguments that the prosecutor has [sic] misled the panel regarding the August 2 search warrant." Filing 232 at

14. He claims that the prosecutor answered a question about the basis for the April 2 search warrant "based entirely on the three issues redacted from the April 2, affidavit, (1) Burke living at the garage, (2) the red Lincoln, and [(3) another informant's] alleged statement that he did not know the amount of drugs that were in the garage." Filing 232 at 47. But, the defendant asserts, "[a]ll these statements were redacted by the Magistrate Judge from the April 2 warrant." Filing 232 at 47.

That's factually incorrect: of those "three issues," only one—Burke's residence—was actually affected by the affidavit as corrected for *Franks* review. *See* filing 76 at 4-6. And there's a simple reason counsel failed to raise that in rebuttal: he didn't have any time for rebuttal. Oral Argument at 15:29, *Mazzulla*, 932 F.3d 1091, (No. 18-2732). He didn't perform deficiently by declining to speak out of turn. Nor did the Eighth Circuit need the help: in fact, a member of the panel specifically asked the prosecutor about the fact of Burke's residence having been excised from the corrected affidavit. *Id*. at 16:55. And the Eighth Circuit's decision reflected that excision in rejecting the defendant's argument for a *Franks* hearing. *Mazzulla*, 932 F.3d at 1100-01.

Accordingly, the defendant has not shown that his appellate counsel was deficient in this regard,[4] nor was he prejudiced by any deficiency.

---

[4] The defendant also asserts, in his brief, that the prosecutor engaged in misconduct and that the Court "needs to consider the prosecutorial misconduct allegation as well." Filing 232 at 47-48. But even assuming this issue hasn't been waived, there was no misconduct: counsel wasn't out of line in relying on the warrant application when addressing probable cause, as opposed to the separate issue of whether a *Franks* hearing was necessary. And prosecutorial misconduct only warrants relief if it was prejudicial, *see United States v. Smith*, 978 F.3d 613, 617 (8th Cir. 2020), *cert. denied,* 142 S. Ct. 396 (2021), which (as explained above) these remarks were not.

7. FAILING TO CONTEST PROBABLE CAUSE FOR SEARCH WARRANT ON APPEAL

Finally, the defendant contends that "counsel rendered ineffective assistance when he failed to argue on appeal the lack of credibility of informants of unknown reliability does not justify the issuance of the warrant." Filing 232 at 15. He argues that "whether Utley, [another informant], and Burke were considered 'reliable sources' instead of 'witnesses of unknown reliability' has never been addressed" because "the issue was never raised on appeal." Filing 232 at 49.

Not so: counsel specifically argued that probable cause was lacking to issue the April 2 search warrant, in no small part because it rested on informants of unknown reliability. *See* Appellant Brief at 4-5, 22-32, *Mazzulla*, 932 F.3d 1091, (No. 18-2732), 2018 WL 5849429. The Eighth Circuit simply rejected that argument. *Mazzulla*, 932 F.3d at 1098. There was no ineffective assistance of counsel.

### III. CONCLUSION

The defendant's allegations either entitle him to no relief, or are contradicted by the record. Accordingly, his § 2255 motion will be summarily dismissed. A movant cannot appeal an adverse ruling on his § 2255 motion unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A certificate of appealability cannot be granted unless the movant "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To make such a showing, the movant must demonstrate that reasonable jurists would find the Court's assessment of the constitutional claims debatable or wrong. *Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *see also Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012).

In this case, the defendant has failed to make a substantial showing of the denial of a constitutional right. The Court is not persuaded that the issues

raised are debatable among reasonable jurists, that a Court could resolve the issues differently, or that the issues deserve further proceedings. Accordingly, the Court will not issue a certificate of appealability.

IT IS ORDERED:

1. The defendant's pro se motion to vacate under 28 U.S.C. § 2255 (filing 232) is denied.

2. The Court will not issue a certificate of appealability in this matter.

3. A separate judgment will be entered.

4. The Clerk is directed to mail a copy of this Memorandum and Order to the defendant at his last known address.

Dated this 24th day of January, 2022.

BY THE COURT:

*[signature: John M. Gerrard]*

John M. Gerrard
United States District Judge